# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT FRIED on behalf of himself, all others similarly situated, and the general public,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>SNAPPLE BEVERAGE CORP.,<br><br>　　　　　　　　　　Defendant. | Case No.:  24-cv-653-DMS-DDL<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint. (ECF No. 5). Plaintiff filed an Opposition, (ECF No. 8), and Defendant filed a Reply, (ECF No. 11). For the following reasons, Defendant's Motion to Dismiss is **DENIED**.

## I.
## BACKGROUND

Plaintiff brings this class action on behalf of himself, all others similarly situated, and the public. (Plaintiff's Complaint ("Compl."), ECF No. 1, Exhibit 2). Plaintiff is a consumer of Defendant's juice, tea, and element beverages ("Products"). (*Id.* at 6). Specifically, he claims to have regularly drank Defendant's Apple Juice, Peach Tea, and Lemon Tea. (*Id.* at 9). Plaintiff alleges that Defendant's labeling of its Products as "ALL NATURAL" is false and misleading because Defendant's Products contain manufactured

1

citric acid ("MCA") and coloring agents. (*Id.* at 3). His Complaint asserts six causes of action: (1) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (2) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (3) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (4) breach of express warranties under Cal. Com. Code § 2313(1); (5) breach of the implied warranty of merchantability under Cal. Com. Code § 2314; and (6) unjust enrichment. (*Id.* at 13–19).

## II.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted". Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true

allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### III.
### DISCUSSION

#### A. Judicial Notice

As a preliminary matter, the parties have requested judicial notice. While Plaintiff seeks judicial notice of two FDA warning letters issued in 2001, Defendant seeks judicial notice of labels on its Products. (Plaintiff's Request for Judicial Notice, ECF No. 9); (Defendant's Request for Judicial Notice, ECF No. 5, Attachment 4). Because these requests are unopposed, the Court grants them. *See, e.g.*, *Rodriguez v. Mondelez Glob. LLC*, 703 F.Supp.3d 1191, 1203 (S.D. Cal. 2023) ("The Court takes judicial notice of Exhibits 1, 3, 9–11, and 14, which are unopposed."); *Salinas v. IA Lodging San Diego, L.L.C.*, 2021 WL 1578957, at *2 (S.D. Cal. Apr. 22, 2021) ("Moreover, courts within this District have granted unopposed requests for judicial notice pursuant to Civil Local Rule 7.1(f)(3)(c)."); *Haddad v. Bank of Am., N.A.*, 2014 WL 67646, at *1 n.1 (S.D. Cal. Jan. 8, 2014) ("Pursuant to Federal Rule of Evidence 201 and Civil Local Rule 7.1(f)(3)(c), the unopposed Requests for Judicial Notice are granted.").

#### B. UCL, FAL, and CLRA Claims

Plaintiff alleges violations of California's consumer protection statutes: UCL, FAL, and CLRA.

> The UCL prescribes business practices that are "unlawful, unfair or fraudulent," Cal. Bus. & Prof. Code § 17200, the FAL prohibits the dissemination of any advertising "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500, and the CLRA declares specific acts and practices in the sale of goods or services to be unlawful, including making affirmative misrepresentations or omissions regarding the "standard, quality, or grade" of a particular good or service, Cal. Civ. Code § 1770(a).

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F.Supp.2d 942, 985 (S.D. Cal. 2014). "Courts often analyze these statutes together because they share similar

attributes." *Id.* The UCL, FAL, and CLRA are governed by the "reasonable consumer" test. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). Under this standard, Plaintiff "must show that members of the public are likely to be deceived." *Moore v. Mars Petcare, US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (citations omitted). This requires more than a "mere possibility" that Defendant's labeling "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id.* (internal quotation marks omitted). It must be "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003).

At this point in the proceedings, Plaintiff need not prove he can satisfy the reasonable consumer test for this is generally a question of fact "which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 134–35 (2007). "However, in certain instances, a court can properly make this determination and resolve such claims based on its review of the product packaging." *Brown v. Starbucks Corp.*, 2019 WL 996399, at *3 (S.D. Cal. Mar. 1, 2019) (quoting *Pelayo v. Nestle USA, Inc.*, 989 F.Supp.2d 973, 978 (C.D. Cal. 2013)). "[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Pelayo*, 989 F.Supp.2d at 978 (collecting cases).

Plaintiff makes two arguments as to why Defendant's "ALL NATURAL" labeling violates California's consumer protection statutes. First, Plaintiff alleges that the use of juice concentrates "for color" is unnatural. (Compl. 7–8). Second, Plaintiff contends that the use of citric acid renders Defendant's Products unnatural. (*Id.* at 6–7). The Court will address each in turn.

### a. Coloring

Plaintiff asserts that adding juice concentrates to Defendant's Juices for color makes the Juices' labeling misleading because terms like "natural color" are "erroneously interpreted by reasonable consumers to mean the color is a naturally-occurring constituent

in the food." (*Id.* at 8). Defendant argues that no reasonable consumer would find its Juices unnatural "simply because they include natural fruit and vegetable juice ingredients for color." (Def.'s Mot. 9). The Court agrees with Defendant, finding that Plaintiff's assertion is a "legal conclusion that is not deemed true even on a motion to dismiss." *Harris v. McDonald's Corp.*, 2021 WL 2172833, at *2 (N.D. Cal. Mar. 24, 2021) (citing *Twombly*, 550 U.S. at 555, 564). Plaintiff's allegation regarding what a reasonable consumer would assume is too conclusory and "lacks a factual foundation to support any determination as to what reasonable consumers do (or do not) believe." *Id.* Plaintiff "cannot proceed simply by asserting h[is] own belief and conclusions about consumers' beliefs without additional facts to 'nudge' h[is] claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "[I]t is not plausible that a reasonable consumer would think that adding a natural product to a natural product renders the latter not natural." *Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476, at *4 (S.D.N.Y. Mar. 18, 2024).

Plaintiff relies only on an FDA policy defining the term "natural" as "nothing artificial or synthetic (including all color additives regardless of source) has been included in" the food. (Compl. 7–8). Courts in the Ninth Circuit have disagreed about whether FDA statements are relevant in analyzing deceptive labeling claims. *Compare Brand v. KSF Acquisition Corp.*, 2023 WL 3225409, at *6 (S.D. Cal. Mar. 17, 2023) ("Allegations a product's label violates an FDA regulation can't form the basis of a deceptive labeling claim under the reasonable consumer test."), *with Ivie v. Kraft Foods Glob., Inc.*, 2013 WL 685372, at *12 (N.D. Cal. Feb. 25, 2013) ("The FDA's 2009 industry guidance statement is relevant to the issue of whether these labels could be deceptive or misleading to a reasonable consumer[.]"). Even acknowledging that FDA guidance is relevant to Plaintiff's allegations,[1] the Court finds that the guidance *alone* is insufficient to show that

---

[1] The Court is skeptical in this context, however, because "the FDA has not engaged in rulemaking to establish a formal definition for the term 'natural'". *Use of the Term Natural on Food Labeling*, U.S.

5

"members of the public are likely to be deceived." *Moore*, 966 F.3d at 1017; *Nacarino v. Chobani, LLC*, 2021 WL 3487117, at *10 n.5 (N.D. Cal. Aug. 9, 2021) ("Although Ms. Nacarino has stated a plausible violation of 21 C.F.R. § 101.22(i), she may not use that violation alone as the basis for her deceptive labeling claims, which implicate the reasonable consumer test."). Plaintiff's failure to plead any additional factual evidence of reasonable consumers' beliefs is fatal to his argument.

Further, the Juices' ingredient lists clarify any misunderstanding a reasonable consumer would have. According to the Ninth Circuit, "qualifiers in packaging, usually on the back of a label or in ingredient lists, 'can ameliorate any tendency of the label to mislead.'" *Moore*, 966 F.3d at 1017 (quoting *Brady v. Bayer Corp.*, 26 Cal.App.5th 1156, 1167 (2018)). "[T]he front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label", which is not the case here. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023). The back labels of Defendant's Apple Juice and Mango Madness Juice clarify that vegetable and fruit concentrates were added *for color* and that the color is not "a naturally-occurring constituent in the food". (Def.'s Mot. Exhibit A) (showing that ingredient list of Snapple Apple includes "vegetable and fruit juice concentrates (for color)" and ingredient list of Mango Madness includes "vegetable juice concentrate and beta carotene (for color)"); (Compl. 8). As such, Plaintiff has not plausibly alleged that reasonable consumers would be deceived by the "ALL NATURAL" label on Defendant's Products simply because they contain juice concentrates for color.

### b. Citric Acid

Plaintiff next contends that Defendant's Products are unnatural because they contain MCA. (*Id.* at 6). To support this contention, Plaintiff cites Defendant's website, which

---

Food & Drug Administration, *available at* https://www.fda.gov/food/food-labeling-nutrition/use-term-natural-food-labeling.

states both that citric acid is "a food ingredient derived from starch" and "is present in citrus fruits". (*Id.* at 7). In response, Defendant argues that Plaintiff has failed to allege that the type of citric acid used by Defendant is artificial and that MCA is "derived from natural sources". (Def.'s Mot. 9). Here, the Court agrees with Plaintiff.

Defendant is incorrect that Plaintiff fails to "allege—anywhere—that the citric acid in Snapple Juice Drinks is artificial or synthetic." (*Id.* at 9). Plaintiff's Complaint links MCA to Defendant's Products three times. First, Plaintiff states that "[m]anufactured citric acid ("MCA"), which *is in the Products*, is an industrial chemical derived, not from fruit or vegetables, but from the fermentation of crude sugars (e.g., molasses and corn starch) by the mold, *Aspergillus niger*." (Compl. 3) (emphasis added). Second, Plaintiff asserts "each of the Products contain MCAs". (*Id.*). Third, farther down in his Complaint, Plaintiff alleges again that Defendant's "Products contain MCA, an industrial chemical". (*Id.* at 6). These are factual allegations that, at this stage, the Court is required to accept. *Iqbal*, 556 U.S. at 678; *Noohi v. Kraft Heinz Co.*, 2020 WL 5554255, at *2 (C.D. Cal. July 20, 2020) (designating Plaintiff's statement that "[a]ll of the Products contain artificial DL-Malic Acid" as an "unequivoca[l] alleg[ation]" of fact). Even if, as Defendant points out, citric acid can "be made naturally, here [P]laintiff alleges that th[is] ingredient[] w[as] not produced naturally, and the [C]ourt must accept th[is] non-conclusory factual allegation[] of the [C]omplaint in the light most favorable to [P]laintiff." *Roper v. Big Heart Pet Brands, Inc.*, 510 F.Supp.3d 903, 914 (E.D. Cal. 2020); *Branca v. Bai Brands, LLC*, 2019 WL 1082562, at *3 (S.D. Cal. Mar. 7, 2019) ("While Branca's assumption as to the type of malic acid contained in Defendants' Products ultimately may be incorrect, at the pleading stage, this Court 'does not operate as a fact-finder,' but, instead, must 'presume all facts plead as true.'"). The main cases relied on by Defendant, *Tarzian* and *Valencia*,

are out-of-Circuit decisions that are less persuasive to the Court on this matter.[2]

Assuming Defendant's Products contain MCA, it is plausible that a reasonable consumer is "likely to be deceived" by Defendant's "ALL NATURAL" labeling on its Products. *Moore*, 966 F.3d at 1017. Unlike the juice concentrates that Defendant designates as added "for color" on its labels, citric acid is a standalone ingredient that lacks further clarification in Defendant's ingredient lists. (Def.'s Mot. Exhibit A). Even if reasonable consumers looked to the back label of one of Defendant's Products to learn about the ingredients, they "could not know that the 'citric acid' listed among the ingredients was an artificial, industrially-manufactured chemical," especially because citric acid occurs naturally in fruits as well. (Plaintiff's Opposition ("Opp'n") 18). In any event, "questions regarding how consumers interpret terms or phrases on product labels are factual inquiries best suited for resolution at a later stage of the litigation and not on a motion to dismiss." *Roper*, 510 F.Supp.3d at 914. The same goes for Defendant's second argument—that MCA is natural because it "can be derived from natural sources and manufactured using natural processes"—which the Court finds more suitable for evaluation after more evidence comes to light in discovery. (Def.'s Mot. 9). Accordingly, because Plaintiff states plausible claims under the UCL, FAL, and CLRA, the Motion to Dismiss is **DENIED**.

---

[2] The complaints in *Tarzian* and *Valencia* were also more generalized. In *Tarzian*, for instance, "the plaintiff had not alleged that Capri Sun contained artificial citric acid. Rather, it said that industrial citric acid is 'usually' artificial because it is more economically viable. Here, Plaintiff[] ha[s] explicitly alleged that [Defendant's Products] contain[] [MCA]." *Noohi*, 2020 WL 5554255, at *3; *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019) ("Plaintiffs need to draw a connection between the common industry practice and the actual practice used by Kraft. Even drawing all reasonable inferences in the Plaintiffs' favor, the complaint fails to draw this nexus, and the Court cannot draw it for Plaintiffs.").

### C. Common Law Claims

Aside from California's consumer protection statutes, Plaintiff alleges breach of express warranties, breach of the implied warranty of merchantability, and unjust enrichment. The Court will address each below.

#### a. Breach of Express Warranties

A seller of goods creates an express warranty by making "[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain." Cal. Com. Code § 2313(1)(a). To prevail on a theory of breach of express warranties, Plaintiff must prove that Defendant "made affirmations of fact or promises" that "became part of the basis of the bargain." *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997).

Defendant contends that this claim fails because Plaintiff has not plausibly alleged that there is an "underlying misrepresentation". (Def.'s Mot. 11). This argument is unpersuasive. For the reasons explained above, Plaintiff has sufficiently alleged at this stage that (1) the Product labels convey to reasonable consumers that the Products are "ALL NATURAL," and that (2) the Products nonetheless contain MCA, an industrial chemical, contrary to Defendant's representations. Accordingly, the Court **DENIES** Defendant's Motion to Dismiss the breach of express warranties claim.

#### b. Breach of Implied Warranty of Merchantability

A contract for the sale of goods implies "a warranty that the goods shall be merchantable," Cal. Com. Code § 2314(1), meaning that the goods are "fit for the ordinary purposes for which such goods are used", *id.* § 2314(2)(c). "A breach of the warranty of merchantability occurs if the product lacks 'even the most basic degree of fitness for ordinary use.'" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal.App.4th 402, 406 (2003)). Merchantability has also been construed as meaning that the product must "[conform] to the promises or affirmations of fact made on the container or label". *Hauter v. Zogarts*, 14 Cal.3d 104, 117 (1975).

Defendant argues that this claim is implausible because its Products are "fit for their ordinary purpose—to be consumed as juice." (Def.'s Mot. 11). Plaintiff does not dispute this argument, but instead contends that Defendant has failed to comply with the second interpretation of merchantability articulated in *Hauter*. (Opp'n 22). The Court agrees with Plaintiff. At this point in the litigation, Plaintiff has plausibly alleged that Defendant has not conformed with its affirmation that its Products are "ALL NATURAL". As such, the Court **DENIES** Defendant's Motion to Dismiss for this claim. *See In re Ferrero Litig.*, 794 F.Supp.2d 1107, 1118 (S.D. Cal. 2011) ("Although Ferrero argues that Nutella® is fit for its ordinary purpose of consumption, Plaintiffs are bringing their claim under a different definition of merchantability, whether the product conforms with 'the promises or affirmations of fact made on the container or label.' Cal. Com. Code § 2314(2)(f). Accordingly, the Court declines to dismiss Plaintiffs' claim for breach of the implied warranty of merchantability.").

### c. Unjust Enrichment

In California, "there is not a standalone cause of action for 'unjust enrichment,'" but "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 231 (2014)). "[T]he theory underlying" an unjust enrichment claim is "that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id.* (quoting 55 Cal. Jur. 3d Restitution § 2). "The return of that benefit is the remedy 'typically sought in a quasi-contract cause of action.'" *Id.* (quoting 55 Cal. Jur. 3d Restitution § 2).

Plaintiff alleges he is entitled to restitution because Defendant derived "financial benefits" from the class members' purchase of the Products. (Compl. 18). He further alleges it "would be inequitable, unconscionable, and unjust" for Defendant to profit from its "wrongful conduct." (*Id.* at 19). Plaintiff has sufficiently stated a quasi-contract cause of action: Defendant enticed Plaintiff and class members to purchase their products through

fraudulent misrepresentations and was unjustly enriched as a result. *See Astiana*, 783 F.3d at 762 (plaintiff sufficiently states quasi-contract cause of action by alleging defendant had enticed plaintiffs to purchase its products "through false and misleading labeling" and that defendant "was unjustly enriched as a result"). Defendant argues only that the unjust enrichment claim should fail because Plaintiff has not sufficiently alleged misrepresentations. (Def.'s Mot. 11). The Court rejects this argument because, as stated above, Plaintiff has sufficiently alleged fraudulent misrepresentations at this stage. Accordingly, the Court **DENIES** Defendant's Motion to Dismiss with respect to the unjust enrichment claim.

## IV.
## CONCLUSION AND ORDER

Based on the foregoing, the Court **DENIES** Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: October 11, 2024

_____
Hon. Dana M. Sabraw, Chief Judge
United States District Court